(No. 5709. October 27, 1931.)

THE BANNOCK LUMBER & COAL COMPANY, a Corporation, Respondent, v. THE TRIBUNE COMPANY, LTD., a Corporation, Appellant, and ELMER T. PETERSON, Defendant.

[4 Pac. (2d) 662.]

Black and Baum, for Appellant.

Standrod & Standrod, for Respondent.

LEE, C. J.—Plaintiff and respondent, Bannock Lumber & Coal Company, sought to foreclose a materialman's lien against defendant and appellant, The Tribune Company, Ltd. Both parties are Idaho corporations. Respondent claimed a balance of $1734.40 due for materials furnished from May 1, 1928, to August 21, 1928, under a contract between appellant and one, Elmer T. Peterson, dated April

27, 1928, for the repairing and remodeling of the former's building; it asked for interest and $200 attorney's fees.

Appellant's answer consisted of specific denials and five affirmative defenses charging in effect that respondent had agreed to furnish Peterson the materials for $1500, that some $600 of the amount actually demanded was an overcharge, a substantial part thereof being for materials furnished under a subsequent and independent contract of which respondent had full knowledge. That prior to the filing of the claim of lien both Peterson and respondent had been fully paid, to the latter's knowledge, and that the first contract having been completed before July 28, 1928, and the last material having been furnished thereunder on July 12, 1928, the time for filing a lien had expired, and that the claim thereof filed on October 18, 1928, was void and unenforceable.

As controlling facts, the court found that under the contract of April 27th,

"Elmer T. Peterson began the remodeling and finishing of the said building under the said contract, and the plaintiff, Bannock Lumber & Coal Company, at various times and dates between the 1st day of May, 1928, and the 21st day of August, 1928, at the special instance and request of the said Elmer T. Peterson, as contractor furnished to the said Elmer T. Peterson, and delivered the same to him on the premises above described, lumber and other materials which materials were used in and about the said building for the purpose of remodeling and finishing the said building under the terms of the said contract."

It further found:

"That the said lumber and other materials so furnished by the said plaintiff to the said Elmer T. Peterson under said contract, was of the reasonable value of Two Thousand Forty-eight and 05/100 Dollars ($2,048.05) on which the said defendant Peterson has paid, at various dates and times, only the sum of Three hundred Seventy-one and 95/100 dollars ($371.95) leaving a balance due to the plaintiff of One Thousand Six hundred Seventy-six and 10/100

Dollars, ($1,676.10), which said sum is now due and owing to plaintiff.''

Conclusions in conformity therewith followed; and judgment of foreclosure was entered for $1676.10, $234.64 interest and $200 attorney's fees. The Tribune Company appealed. Chief among the errors urged is the court's failure to make findings on certain issues raised by the affirmative defenses, to wit, that:

''Respondent herein at all times knew of the payment by the appellant to Peterson of the amount of the estimates and thereby waived its right to a lien.

''The work and materials performed or furnished in August, 1928, was a part of the original contract.

''Officials of respondent were acquainted with the terms of contract and issuance of architect's certificates.

''Peterson furnished a material list to respondent and respondent agreed that the materials necessary would be furnished for $1500.

''Respondent knew the terms of the contract and by reason of secretary-treasurer of respondent acting as Peterson's agent in operating the books, controlling bank account, etc., it was estopped from asserting a lien.

''Payment of August items for materials by appellant to Peterson and Peterson's turning the check over to respondent's Secretary-treasurer for cashing, and that by so doing, payment was made of August items, for material and that if such payment were made, the lien would be void.''

As has been noted, the court found directly that the materials furnished in August were used in ''remodeling and finishing the said building under the terms of the said contract,'' referring to the contract of April 27th. The burden of proof was upon appellant to establish its affirmative defenses. Unless that burden had been discharged it was unnecessary for the court to make findings thereon. And, had the burden been discharged, findings, unless material, were not required. In this connection is the alleged knowledge of respondent that appellant had paid Peterson the full amount of the estimate and its ac-

quaintance with the terms of the contract and issuance of architect's certificates.

Granted that respondent did know these things, of what effect would such knowledge have been in the face of the contract itself and the disposition of the payments made thereunder? Respondent knew that the contract provided that "The Owner, without invalidating the contract, may make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly. All such work shall be executed under the conditions of the original contract." The contract specifically provided for a counter "according to details which will be furnished." Notwithstanding this provision, Peterson, in attempting to show that the August items had been furnished under a subsequent contract, deposed as follows:

"Q. Now, Mr. Peterson, I notice on Exhibit 1, on the back of sheet 2 thereof, items for August 4th, 6th, 17th and 21st, marked 'Mill'; were those items furnished to you by the plaintiff, Bannock Lumber & Coal Company, for the purpose of being used for remodeling that building? A. That was an after consideration. The blue-print said that all cabinet work and counters was to be furnished by the owner, and that was not in my contract, but they decided, after the job was completed, to let me do that for them, also, and I told them how much it would be, and they told me to go ahead and make it, and then I went and ordered the material from the mill and it was milled out by the planing mill and was charged to the same job, and that is where those items come in.

"Q. Then, as I understand it, the items that were used, and received from the plaintiff under dates of August 4th, 6th, 17th and 21st, were ordered from them by you and used after the completion of your contract to remodel the building? A. Yes sir, and that was an extra consideration, and that belonged in the counters."

We, then, have this situation. The architect's certificate of completion issued on July 28th, a fact not shown to have been known to respondent; the owner, in pursuance of his

contract right, "adding to" the work already done by ordering the contractor "to panel and door the back of the counter"; the contractor going to respondent on August 4th, ordering materials and telling the manager to "charge them to the Tribune job." What job? Peterson says it was the "same job," the only Tribune job at the time on respondent's books. Peterson says he had theretofore told respondent's manager that the Tribune job had been completed: the manager denies it. Nowhere does it appear that the manager was ever told that a new job was under way. Appellant insists that respondent, by reason of its familiarity with the work's progress, should have known that a new contract had been undertaken. The court had all the evidence before it, including Peterson's characterizations, "afterthought" and "same job," and found only one contract, that of April 27th. We will not disturb the finding. This court said in *Valley Lumber & Mfg. Co. v. Driessel*, 13 Ida. 662, 670, 13 Ann. Cas. 63, 93 Pac. 765, 768, 15 L. R. A., N. S., 299:

"The fact as to whether the respondent had information that the porch was built under a separate contract was within the possession and knowledge of the appellants, and they should have proved that fact by a preponderance of the evidence if they relied upon it, which they failed to do."

Appellant complains that with knowledge of their source respondent applied certain moneys appellant paid Peterson to divers other obligations of the latter. Suppose it did. In the absence of any indicated disposition by Peterson, his creditor had a right to apply the money upon any indebtedness it held against him. The money by appellant paid Peterson on the job's contract price became Peterson's money encumbered with no duty of agency or trust. (*Valley Lumber & Mfg. Co. v. Nickerson*, 13 Ida. 683, 692, 93 Pac. 24.) With that money he could deal as he pleased. (*Mack v. Colleran*, 136 N. Y. 617, 32 N. E. 604; *Jefferson v. Church of St. Matthew*, 41 Minn. 392, 43 N. W. 74.) When he delivered it to respondent, the latter

had the creditor's right to apply it to whatever claim against his debtor he saw fit, unless the debtor had directed that it be applied in a particular manner.

██ Misapplication in two specific instances is charged by appellant. Peterson had delivered to respondent his personal check for $348, bearing the notation, ''Tribune job.'' Of this amount, $195 was credited to the Tribune account, and the balance to separate claims of respondent against Peterson. At first blush, it would seem that the notation on the check directly apprised respondent of Peterson's intention to apply the whole of the check to the Tribune account, and that it was respondent's duty thus to apply it. But, respondent's manager, Dolman, explaining the application of the check, testified, without contradiction, that Peterson was present when the transaction occurred and that ''the check was paid in the form Mr. Peterson directed.'' The court must have believed him, since it allowed no deduction of the sum allegedly misapplied.

On September 19th, appellant gave Peterson a check for $149.50, the notation being ''Counter and all Extras in full.'' This check indorsed by Peterson and one Freckleton, one of respondent's employees, was later cashed by Freckleton, at Peterson's request, and the money delivered to Peterson who failed to apply it to the Tribune account. Appellant insists that this money, had it been properly applied, would have paid respondent in full for the August items, extinguishing all right to a lien therefor and that the time for claiming a lien for all former material had expired, the last item having been furnished on July 12th. The check was never delivered to respondent. It was always Peterson's property. Instead of directing that it be applied to the Tribune account he proceeded to devote it to other ends. *Vide* the testimony of the witness Freckleton:

''Q. Just why did Peterson have you cash this last check, Mr. Freckleton? A. Because he said he had this outstanding note that was past due and he was afraid that Galbraith would take the money.

''Q. Did he get the money? A. He got the money to send his girl to Moscow, and—''

By what right could Freckleton have exercised dominion over Peterson's property, when the latter chose to exercise that dominion himself? We find no element of estoppel.

Finally, there is the contention that respondent at the outset agreed to furnish the materials for a price of $1500. Prior to submitting his bid, Peterson testified that he figured the prospective job with respondent and, upon the estimate arrived at, there was a verbal agreement that the price of required material would be $1500: there was no written contract. There is nothing in the record to show the items considered or that respondent charged any more for any item than it agreed to. On the other hand it appears that, prior to the August work, much additional or different material was used in making changes under the contract. These facts abundantly warranted the court in finding that the charges made were not only reasonable but "due and owing."

Judgment affirmed; costs to respondent.

Givens, Varian and McNaughton, JJ., concur.